MISSISSIPPI EXPORT R. CO. *v.* SUMMERS *et al.*

(Division B.   Jan. 18, 1943.   Suggestion of Error Overruled Feb. 15, 1943.)

[11 So. (2d) 429.   No. 35214.]

180

Welch & Cooper, of Laurel, **H. D. Young**, of New Augusta, and **Hannah, Simrall & Foote**, of Hattiesburg, for appellant.

C. C. Smith, of Richton, and Currie & Currie, of Hatties-burg, for appellee.

186

188

Argued orally by **Ellis B. Cooper**, for appellant, and by **Alexander Currie**, for appellee.

**Anderson, P. J.**, delivered the opinion of the court.

The appellees, the wife and children of Seth Summers, brought this action in the circuit court of Perry County

against appellant, Mississippi Export Railroad Company, and Les Jennings to recover damages for the alleged wrongful death of the husband and father. There was a trial resulting in a verdict and judgment of $27,000, from which judgment the railroad company alone appeals. The principal ground assigned and argued for reversal is that the defendants were entitled to a directed verdict which was requested by them and refused. We have reached the conclusion that they were entitled to it upon the following considerations: Jennings was engaged in transporting, by truck, gravel to the City of Pascagoula. He had employed the deceased Summers to drive the truck. On the morning of the 24th of March, 1941, Summers while so engaged, on his trip to Pascagoula, approached the crossing of Highway 63 over the tracks of the railroad company. The crossing was blocked by a railroad box car; he ran into it and was killed. The ground relied on for recovery against the railroad company was that although the sun was about an hour high there was a fog so dense that a driver of an automobile complying with the law in all respects was unable to see more than a few feet ahead of him, and that notwithstanding the car had been on the crossing more than five minutes its presence there was unguarded by lights or otherwise; that the result was Summers ran into the box car without being able to see it in time to stop. The ground for recovery against his employer Jennings was that the former required him to haul from five to seven tons of gravel in a one and one-half ton truck, making the brakes ineffective, which resulted in part in his running into the box car. The evidence showed that the railroad company was engaged in switching operations and in doing so had blocked the crossing probably for eight or ten minutes. And Summers was familiar with the crossing. Taking the evidence as a whole it was sufficient to establish liability on the part of both defendants provided the law was with the plaintiffs.

On the authority of Gulf, M. & N. R. Co. v. Holified, 152 Miss. 674, 120 So. 750; Gulf, M. & N. R. Co. v. Kennard, 164 Miss. 380, 145 So. 110; Spilman v. Gulf, & S. I. R. Co., 173 Miss. 725, 160 So. 445; Gulf, M. & N. R. Co. v. Addkison, 189 Miss. 301, 194 So. 593; Summerford v. Illinois C. R. Co. (Miss.), 196 So. 264, a railroad company may leave its train, or any part of it standing over a public crossing, night or day, and whether light or dark, without any light or warning of any kind to the traveling public; that the presence of the car or cars themselves is all the warning the traveling public is entitled to unless the conditions were unusual. Here they were not.

The Holifield case is the leading decision in this state on this question. In that case the evidence showed that the collision occurred on a dark night when the road was dusty, that the automobile was properly equipped with brakes and lights in good condition and was being driven at the rate of about fifteen miles an hour, that the driver was constantly keeping a lookout ahead but on account of the absence of lights at the crossing and the darkness and dust he was unable to see the box car on the railroad track until within about eight feet of it, and then it was too late for him to stop. The court uses this language [152 Miss. 674, 120 So. 751]: "The appellant had the right to occupy the crossing for its legitimate business purposes, and while so occupying the crossing it was not required to maintain lights on its cars, or to station a man with a lantern at the crossing to give warning that it was obstructed by the cars, unless the conditions and circumstances were such that the employés knew, or in the exercise of reasonable care and caution should have known, that a person driving upon the street at a reasonable rate of speed in an automobile properly equipped with lights, and carefully operated, could not see or might not be able to see the cars in time to avoid a collision therewith, or, in other words, as said by the Supreme Court of Alabama in the case of St. Louis-San Francisco Railway Co. v. Guthrie, 216 Ala. 613, 114 So.

215, 56 A. L. R. 1110: 'The employes of the defendant, in the absence of some peculiar environment, are justified in believing that travelers in automobiles properly lighted and driving at reasonable speed will observe the cars upon the crossing in time to avoid coming into collision with them.' ''

Section 5575, Code 1930, provides, among other things, that every motor vehicle driven at night shall be equipped with ''at least two lights, showing white lights, visible at least two hundred feet in the direction toward which such motor vehicle is proceeding.'' Section 51, par. (c), Chapter 200, Laws of 1938, provides, among other things, that the driver of a motor vehicle ''when approaching and crossing an intersection . . . when special hazard exists with respect to pedestrians or other traffic or by reason of weather or highway conditions, and speed shall be decreased as may be necessary to avoid colliding with any person, vehicle, or other conveyance or on entering the highway.''

The authorities referred to simply mean that the railroad company had the right to assume that Summers was complying with the law. If he had been it is manifest that the collision could not have occurred. The only warning due him was the presence of the box car, which he could have seen in ample time to stop. The comparative negligence statute has no application because the negligence of Summers was the sole proximate cause of his death—so far as the railroad is concerned.

Reversed and judgment here for appellant.

ON SUGGESTION OF ERROR.

**Griffith, J.,** delivered the opinion of the court on suggestion of error.

In Summerford v. Illinois Central R. Co. (Miss.), 196 So. 264, the facts were that the injured party was acquainted with the crossing, having passed it many times before; it was night and was raining; he was driving

twenty or twenty-five miles an hour, and he testified, which testimony was taken as true in disposing of the case, that "the fog and the contour of the highway obscured his vision so that he could not see the box car on the track until he was within twenty feet of it."

No stronger appeal is presented by the case at bar than in that case. Appellees urge that we should overrule the Summerford case and all those which it followed, from the Holifield case (Gulf, M. & N. R. Co. v. Holifield), 152 Miss. 674, 120 So. 750, on down. Those cases are sustained by the weight of authority in other states upon the same point, whence we are constrained to decline the stated suggestion; and in so doing we have not at all overlooked any of the other contentions made by appellees.

In next to the last paragraph of our former opinion we referred to Sec. 5575, Code of 1930. This reference should have been to the sections amendatory thereof, to-wit, subsections (a) and (b), Sec. 104, and subsection. (a), Sec. 105, Chap. 200, Laws 1938.

Suggestion of error overruled.