MAGERS *v.* OKOLONA, HOUSTON & CALHOUN CITY R. CO.

(Division A. Jan. 20, 1936. Suggestion of Error Overruled Mar. 16, 1936.)

[165 So. 416. No. 31911.]

W. O. Lawrence, of Calhoun City, and Creekmore, Creekmore & Capers, of Jackson, for appellant.

Eugene B. Ethridge, of Memphis, Tenn., for appellee.

Stovall & Stovall, of Okolona, for appellee.

Argued orally by **Hiram H. Creekmore** and **Walter W. Capers**, for appellant, and by **Eugene B. Ethridge**, and **R. C. Stovall**, for appellee.

**McGowen, J.**, delivered the opinion of the court.

Mrs. Effie Magers, on behalf of herself and her children, brought an action against the railroad company for dam-

ages alleged to have accrued by reason of the death of Allen Magers, their son and brother, respectively, who was instantly killed in the collision of a motorcar driven by him against a gondola car loaded with gravel, standing on the railroad track, which gondola car, it is alleged, was negligently and unlawfully placed upon a public highway or street, and allowed to remain there blockading a considerable part of the traveled highway or street.

The railroad company filed a plea of the general issue, and two special pleas, one to the effect that the deceased was driving an automobile within the corporate limits of the town of Calhoun City at a greater rate of speed than twenty miles an hour, in violation of law, alleging this to have been the proximate cause of Magers' death; the other special plea set up violation by Magers of the stop sign warning statute at the railroad crossing. Issue was joined on the special pleas. At the conclusion of the appellant's evidence the court excluded it, and peremptorily instructed the jury to find for the defendant. Judgment was accordingly entered for the appellee, and appeal was prosecuted here.

The facts essential to an understanding of the case are about as follows: About nine o'clock Sunday night, January 14, 1934, the decedent, Magers, accompanied by Miss Putnam, had been driving a Chevrolet automobile about two hours. The lights on the automobile had gone out, and on two occasions he had had a mechanic repair them. After the last repairs on the lights, Magers drove to a café where he drank a considerable quantity of some liquid which Miss Putnam, his companion, believed to be whisky. Leaving the café on the public square, he drove along the public street toward the railroad depot in Calhoun City, a distance of approximately two thousand feet from the square. This street merges into public highway No. 9, both running in the general direction north and south to the depot, and proceeding west at a point about one hundred twenty-five feet north of the

railroad track where the gondola car stood, was a curve of about twenty-two degrees. A car driving south on that highway would negotiate this curve.

Miss Putnam, whose deposition was taken on behalf of the railroad company, was the only eyewitness of the accident. Her deposition was offered by the appellant. Her testimony is to the effect that within five minutes from the time they left the safé the collision had occurred, and Magers' death had ensued. She estimated that he was driving at a rate of about forty miles an hour—she was certain that he was traveling more than thirty miles an hour. The visibility on that street from the square to the depot was clear. She did not think Magers was driving recklessly, and did not apprehend any danger until the instant before the collision occurred, when she saw the gondola car, and immediately the automobile driven by Magers struck it. The gondola car was on the east side of the street, and she thought the automobile struck it about the middle. Seated to the right of the driver, Magers, she did not see the obstruction in time to warn him. According to her, the lights on Magers' automobile were burning, but whether bright or dim she could not say. Asked if there was a city light burning at that point, and whether the gondola car could be seen, her answer was, ''Yes, sir, there was a light on down there. I saw a car, I thought it was from the car lights.'' The gondola car was not connected with a train. Miss Putnam said that but for a curve the road would have gone into the middle of the depot. She had accompanied Magers on a trip south over this road on Saturday night.

A former employee of the railroad company testified that he had assisted the civil engineer of the railroad in making measurements as to where the gondola car, spotted on the railroad track, was located with reference to the street; and his evidence was to the effect that the gondola car was spotted four and one-half feet on the traveled portion of the public highway, and six feet if

the coupling attached to the gondola car was included; and of the street there remained unoccupied by said car twenty-six feet to the west thereof. The evidence shows that this street and highway was graveled, and that there was gravel around the depot; and that as the highway proceeds south to the west line, it passes about a foot and a half from the depot. At the point where the collision occurred the street is graveled for a width of about forty-five feet; in addition to which is a sidewalk five feet wide on the extreme west side, making a fifty-foot street. These gondola cars were parked on the lead track, there being another track south of it and north of the depot. The distance from the gondola car to the depot is not shown, although it was short. The gondola car had been placed in this position on Saturday afternoon, and had remained there for about thirty hours when this accident occurred; it had not been placed there in the course of any switching operations, but seems to have been left there indefinitely, to be unloaded at a future time. And the evidence tends to show that the railroad company had so parked its cars for unloading purposes prior to this time. No town ordinances were introduced. Peeler testified that the fixtures for a light were in place near the depot and this gondola car, but had not been supplied with a bulb for many months prior to this accident; but that within a short time thereafter it was equipped to light the street. This evidence on the part of Peeler was excluded by the court.

There were marks on the side of the gondola car, two to seven feet from the west end thereof, evidencing the collision with it by the automobile, the bumper of which was found resting on the stirrup, two feet from the west end of the gondola car. There was evidence tending to show that the gondola car was in the highway to a distance, variously stated, from four and one-half to fourteen feet.

There is no contention that there was warning of any kind placed on or about the gondola car.

Appellant contends that the court below erred in granting a peremptory instruction; that the question of negligence on the part of the railroad company and of Magers, the driver of the automobile, respectively, was for the jury; that Magers' contributory negligence in driving at an excessive rate of speed at that time and place, if proved, would not bar a recovery, but would only diminish the damages.

Section 511, Code 1930, in substance provides that contributory negligence will not bar a recovery, but that the damages shall be diminished in proportion to the amount of negligence on the part of the person injured. And section 512 thereof provides that all questions of negligence and contributory negligence shall be for the jury to determine. Section 980 thereof makes the obstructing of a highway in whole or in part, the obstruction not being immediately removed, a misdemeanor; but this section has no application to a street in a municipality. Blocker v. State, 72 Miss. 720, 18 So. 388.

Counsel for appellant cites many cases from this court arising under section 6128, Code 1930, which requires a railroad to uncouple its cars so as not to obstruct travel for a longer period than five minutes; and in a city, town, or village not to obstruct a street for a longer time than is fixed by ordinance of the municipality. In the case at bar no ordinance is introduced. The gondola car had obstructed this street for thirty hours.

Without regard to section 6128, it was negligence for the railroad company to allow its cars to remain located on the traveled portion of the public highway without reason therefor, and not necessary to its business of transportation. Vicksburg & Meridian R. Co. v. Alexander, 62 Miss. 496; Terry v. New Orleans Great Northern R. Co., 103 Miss. 679, 60 So. 729, 44 L. R. A. (N. S.) 1069; 52 C. J., "Railroads," sec. 1781.

Proceeding from this premise, it is within the contention of appellant that the negligence, or not, of the deceased was concurrent with that of the railroad company in directly or proximately causing the death of Magers, and was, under sections 511 and 512, supra, a question for the jury. Citing the Alexander case, supra, also the case of Jarrell v. New Orleans & N. E. R. Co., 109 Miss. 49, 67 So. 659, and Southern R. Co. v. Floyd, 99 Miss. 519, 55 So. 287.

In Cumberland Tel. & Tel. Co. v. Woodham, 99 Miss. 318, 54 So. 890, 891, this court held as follows: ''Without attempting to define proximate cause in such terms as will be applicable to all states of fact—for to do so is practically impossible—it will be sufficient to say that the negligent act of a person, resulting in injury, is the proximate cause thereof, and creates liability therefor, when the act is of such character that, by the usual course of events, some injury, not necessarily the particular injury, or injury received in the particular manner complained of, would result therefrom, provided the attendant circumstances are such that an ordinarily prudent man ought reasonably to have anticipated that some injury would probably result from the act done. In order that a person may be liable for damages resulting from his negligence, it is not necessary that his negligence should have been the sole cause of the injury. His negligence may be the proximate cause, where it concurs with one or more causes in producing an injury, and, although the author or authors of such cause or causes may also be liable therefor. 29 Cyc. 492-496.''

Of course, the negligence of the defendant must be the proximate cause of the injury. Hines, Director, v. Moore, 124 Miss. 500, 87 So. 1. If the defendant's negligence is a substantial factor in causing harm to another, then that action is negligent on the part of the actor. If reasonable men have a difference of opinion as to whether or not the negligence of the actor continued as a substantial factor

in bringing about the injury, then the question is for the jury. Restatement, Law of Torts, sec. 434.

"If the actor's conduct is a substantial factor in bringing about harm to another, the fact that the actor neither foresaw nor should have foreseen the extent of the harm or the manner in which it occurred does not prevent him from being liable." Section 435, Restatement, Law of Torts.

But appellee says, in response to this, that the decedent's own negligence was the sole proximate cause of his injury and death; and that its negligence, if any, was too remote, and relies upon the case of Gulf, M. & N. R. Co. v. Holifield, 152 Miss. 674, 120 So. 750, 751, which case has been approved by this court in Gulf, M. & N. R. Co. v. Kennard, 164 Miss. 380, 145 So. 110, and Spilman v. Gulf & S. I. R. Co., 163 So. 445. In the Holifield case the court used this language, in a case where Holifield drove a car along a straight street, which was obstructed by box cars placed across the street by agents and employees of the railroad company while engaged in switching operations in the transaction of its business:

"The appellant had the right to occupy the crossing for its legitimate business purposes, and while so occupying the crossing it was not required to maintain lights on its cars, or to station a man with a lantern at the crossing to give warning that it was obstructed by the cars, unless the conditions and circumstances were such that the employees knew, or in the exercise of reasonable care and caution should have known, that a person driving upon the street at a reasonable rate of speed in an automobile properly equipped with lights, and carefully operated, could not see or might not be able to see the cars in time to avoid a collision therewith." And cites with approval St. Louis-San Francisco Ry. Co. v. Guthrie, 216 Ala. 613, 114 So. 215, 56 A. L. R. 1110, and a number of other cases holding to the same effect, from other jurisdictions.

In all of these cases the railroad companies had blocked the crossings in the ordinary, usual, and legitimate course of carrying on the business of transportation. In our judgment, none of these cases control the case at bar. The situation here was one in which the railroad agents knew, or should have known, by the exercise of reasonable caution, that there was a sharp curve in the public highway close to the crossing, where driving at a reasonable legal rate of speed, the time intervening in which a driver could see this partial blocking of the crossing was from two and a half to five seconds. The height of the gondola car is not shown. The driver of the automobile had the lights repaired a few moments before the accident which resulted in his death. Neither Miss Putnam nor any other witness undertook to say exactly what occurred in those few seconds intervening from the time Magers rounded the curve, and the gondola car came into view, followed by the collision. Reasonable men could well differ as to what occurred to the lights, and as to where they were focused, in the space of time necessary for the driver of the automobile, by the exercise of reasonable care, to have avoided the collision. If he were driving at a greater rate of speed than twenty miles an hour, that was negligence on his part concurrent with the original negligence of the railroad company in using the public streets and highways for a common parking place. The jury might have so found the facts in this case. We do not say the jury should have adopted this view, but we do say that reasonable men might entertain this view, and so doing, might have found liability or not, according to the construction placed upon it.

There is much argument on the part of appellee to the effect that the gondola car was not parked in the used space of the public highway at all. As we have already indicated in the statement of facts, which we think are fairly stated from all the testimony, these arguments should be addressed to the jury, and may or may not

be powerfully persuasive. We think that even on a direct application of the Holifield case to the facts, the closeness of the curve to the parked gondola car, of which the railroad company had notice, or should have had, was a matter for the consideration of the jury, and that the court below erred in granting the peremptory instruction.

We note especially that this gondola car, which was evidently not a box car, extended across the street only partially, this not being a case where the street is entirely blocked by an object which the injured party was bound to see if he looked or exercised any care whatever for himself. The street was so blocked for thirty hours. The gondola car was not left thus partially blocking the highway by the employees and agents of the railroad in the prosecution of its legitimate business, and under the environment we have detailed, as to the curve and its proximity to the railroad track, the proximate cause of Magers' death was a question for the jury. The conditions and circumstances already detailed were such that reasonable, fair men might differ as to the proximate cause of this death, and on these facts a jury might find that the employees of the railroad in the exercise of reasonable care should have anticipated that because of all the conditions and environments persons traveling along that highway in vehicles properly equipped with lights, and operated with due care, might suffer some injury by collision with the gondola car partially blocking the highway. The measurements actually made showed that the gondola car only obstructed four and one-half feet of the traveled part of the highway. If the barrier was across the entire highway, as in the Holifield case, then the traveler on the highway was in law bound to look, and would be presumed to see whether in fact he did or not.

As to the suggestion, earnestly pressed by appellee, that Magers' negligence was suicidal, we say that gross

negligence on the part of the injured party does not defeat a recovery from the negligent actor whose negligence proximately causes or proximately contributes to the injury. Yazoo & M. V. R. Co. v. Williams, 114 Miss. 236, 74 So. 835; Mobile & O. R. Co. v. Campbell, 114 Miss. 803, 75 So. 554.

We think that the evidence of the witness, Peeler, to the effect that there was no light shining at the crossing at the time of the accident, was competent, and that under the amended declaration it would have been proper for the court below to permit his evidence to go to the jury as showing the conditions then existing at the point where Magers was killed. But it was excluded on the ground that it showed liability on the part of the city. We cannot agree with this position.

Reversed and remanded.